The Court in delivering their opinion expressed no opinion. upon the question that had been raised with regard to the extension of the statute, but gave several reasons which had induced them to waive deciding that question upon a like the present. They were however of opinion that *338 in a case of maihem it was dkscretionary with the court whether to bail or not; that it must depend on the circumstances of each individual case whether they should exercise that discretion or not, but that where the wounding is enormous, and there is no pretence of innocence, it would be improper to admit the prisoners to bail.
Not®.' — From the peculiar connexion which formerly existed between the colonies now constituting a large part of the United States with Great Britain; from the circumstance that the common, law of England was adopted almost universally among us, and that many of the acts of Parliament were recognized as part of our law, questions have frequently arisen, and probably will continue to arise, how far these statutes have any obligatory force among us. Different opinions have been entertained and expressed upon ■ this subject by Judges of equal ability and worth: but upon a questionof this kind, so completely anomalous in its nature, the grounds for the decision of which are so scattered, obscure, and remote, we cannot be surprised if political feelings have sometimes mingled in the consideration, and influenced the opinion that has bee» adopted. In the year 1782, it was declared by McKean Chief Justice of Pennsylvania, an able independent and profound lawyer that44 all statutes made since the settlement of Pennsylvania have « no force there, unless the colonies are particularly named; and « all statutes made before that settlement have no force unless “ convenient and adapted to the circumstances of the country.’® 1 Hall. 67, 74, 5.
In an old edition of Blackstone’s Commentaries in the possession* of the editor, we find the following M. S. note which we have reason to believe authentick. “ Chief Justice Kinsey on the subject of the extension of the statutes of Great Britain in New- « Jersey is of opinion that the statutes subsequent to the settle» « nient of the colony do not extend: Chief Justice Brearly (a) « was of opinion that the statutes prior to the surrender of the « Government to Cfeen Anne, (b) which was the 15th of April ®4 1702, do extend.”
From an abstract of a special verdict in the case of Calven’¿ lessee v. Eden el al. it appears that in Maryland the rule that has been adopted is that41 all statutes antecedent to the settlement oí « the Province so far as suited the condition situation and circum44 stances” of the inhabitants were adopted. 2 Harris and MiHen. ry 284. This would appear to exclude all statutes passed subsequent to the settlement, a construction which is negatived by an opinion of Hanson J. in the case of Moore’s lessee v. Pearce 8 Harris and M-Hen. 241. where he says,44 agreeably to the rules £i which prevailed in our Provincial court respecting the adoption 4i of English statutes, I am satisfied that the 7 Geo. 2. c. 20. makes 44 a part of our law under the constitution.” He does not however state what those rules are, nor do the reports of earlier decisions in tf- :*t stale enable us to ascertain them. The statute of i 1. Geo. 2. relative to the payment of rent extended also to Maryland. 16. 290.
*338 Prisoners remanded.
It would seem from a comparison of these opinions that the pre - vailing idea is, that the statutes of British Parliament, as such, have no force with us; but so far as they have been practised under, they have become a part of our common law, and are authority. Nor is this idea in any degree contradicted by a circumstance which must occur to every lawyer upon reflection, viz, that in examining the particular English statutes a very largo proportion of then» will be found to have been adopted, much larger indeed than it can he supposed would have been sanctioned, had they been individually submitted to the choice of the people or their representatives. It is to be recollected however that before the revolution it was customary for the gentlemen of the bar, and the Judges to receive their legal education in England, where they were instructed equally in the common and statute law, and insensibly introduced much of the latter into the Provinces.
The idea that none of the British statutes have any other force in the United States, than such as is derived from having been adopted by ourselves is sanctioned by an ingenious publication of Judge Wilson of the Supreme Court of the U. S as early as the year 1774. (a) in which the same idea is very ably supported, and the whole question fully investigated.